UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ORENO BADDIE,                                    No. 2:07-CV-0345-FVS

                    Petitioner,                  ORDER DENYING PETITION FOR
                                                 WRIT OF HABEAS CORPUS

          v.

D. K. SISTO, et al.,

                    Respondents.

   **THIS MATTER** comes before the Court on Petitioner's Petition For
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Ct. Rec. 1).
Petitioner is proceeding pro se.  Respondent is represented by Andrew
R. Woodrow, a Deputy Attorney General for the State of California.

   **BACKGROUND**

   At the time his petition was filed, Petitioner was in the custody
of the California State Prison, Solano, in Vacaville, California,
pursuant to his 1990 conviction in Lake County Superior Court for
Second Degree Murder.  (Ct. Rec. 1).  Petitioner is currently serving
a sentence of 15-years-to-life with a two-year enhancement for the use
of a firearm.  He has not been found suitable for parole.

   Petitioner does not challenge the validity of his conviction or
sentence but instead challenges the December 3, 2004, denial of parole
by the Board of Parole Hearings of the State of California (the
"BPH").  (Ct. Rec. 1).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 1

## I.  Factual History

On May 12, 1989, two men, including the victim in this case, burglarized Petitioner's home.  On May 14, 1989, the victim showed up on Petitioner's doorstep.  Petitioner went to the door with a handgun and informed the victim he was under citizen's arrest for the burglary.  The victim refused to cooperate.  Petitioner then shot the victim five times, killing him.

## II.  Procedural History

On January 8, 1990, Petitioner was convicted in Lake County Superior Court for Second Degree Murder and sentenced to 15-years-to-life with a two-year enhancement for the use of a firearm.  Petitioner has been incarcerated for the last 20 years.  His minimum eligible parole date was August 11, 2000.

The parole denial which is the subject of this petition took place after a parole hearing held on December 3, 2004.  After the December 3, 2004 denial, Petitioner filed petitions for a writ of habeas corpus with the Lake County Superior Court, the California Court of Appeal, First Appellate District, and the California Supreme Court, all of which were denied.

On February 21, 2007, Petitioner filed the instant petition for writ of habeas corpus in this Court.  (Ct. Rec. 1).  Petitioner contends the BPH violated his due process rights by denying him parole on December 3, 2004.  (*Id*.).  Petitioner additionally argues that the BPH's requirement that he participate in Alcoholics Anonymous in order to be found suitable for parole violates his constitutional rights. (*Id*.).  Respondent filed a response to the petition on April 18, 2007.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 2

(Ct. Rec. 8).  Petitioner filed a traverse to the response on June 21, 2007.  (Ct. Rec. 14).  Petitioner's petition for writ of habeas corpus (Ct. Rec. 1) is now before the Court.

**DISCUSSION**

**I.   Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Clearly established federal law" consists of "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Anderson v. Terhune*, 516 F.3d 781, 798 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).  A decision is "contrary to" clearly established federal law in two circumstances. First, a state court decision is contrary to clearly established federal law when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405.  Second, a state court decision is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 3

on a set of materially indistinguishable facts." *Id*. at 412-413.  A
state court unreasonably applies clearly established federal law when
it applies the law in a manner that is "objectively unreasonable."
*Id*. at 409.  "AEDPA does not require a federal habeas court to adopt
any one methodology in deciding the only question that matters under §
2254(d)(1) – whether a state court decision is contrary to, or
involved an unreasonable application of, clearly established federal
law." *Lockyer*, 538 U.S. at 71.

     In examining whether state courts reached a decision that was
contrary to federal law or whether the state courts unreasonably
applied such law, the Court should look to the last reasoned state
court decision. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)
*cert*. dismissed, 538 U.S. 919, 123 S.Ct. 1571, 155 L.Ed.2d 308 (2003).
Where no reasoning is given in either the state court of appeals or
the state supreme court, Ninth Circuit Courts must determine whether a
state court's decision was objectively unreasonable based on an
independent review of the record. *Himes v. Thompson*, 336 F.3d 848,
853 (9th Cir. 2003) (quoting *Delgado v. Lewis*, 223 F.3d 976, 981-982
(9th Cir. 2000).  "Independent review of the record is not de novo
review of the constitutional issue, but rather, the only method by
which we can determine whether a silent state court decision is
objectively unreasonable." *Id*.

     Here, neither the First District Court of Appeal nor the
California Supreme Court issued a "reasoned opinion":  both courts
summarily denied review.  (Ct. Rec. 8, Exhs. 4 & 5).  The Lake County
Superior Court issued a one-paragraph denial indicating that there was

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 4

some evidence in the record to support the decision of the BPH.  (Ct. Rec. 8, Exh. 3).  The Lake County Superior Court decision is the last reasoned decision from a California state court.  Therefore, this Court shall examine the superior court's decision to determine whether there existed a contrary or unreasonable application of federal law at the state level with regard to Petitioner's claims.

**II.  Due Process**

Petitioner alleges that his due process rights were violated because the BPH's denial of parole was not supported by "some evidence" that he currently poses an unreasonable risk of danger to public safety.  (Ct. Rec. 1).

Under the Fifth and Fourteenth Amendments to the United States Constitution, the government is prohibited from depriving an inmate of life, liberty or property without the due process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be analyzed in two steps:  the first asks whether the state has interfered with a constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient.  *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

**A.  Liberty Interest in Parole**

Respondent contends that California inmates do not have a federally protected liberty interest in parole and that Petitioner is thus not able to state a claim for federal habeas relief.  (Ct. Rec. 8 at 7-9).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 5

The United States Supreme Court has determined that there is no federal constitutional right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979). Under *Greenholtz*, the due process protections guaranteed in a parole hearing are minimal, requiring only an opportunity to be heard and notice of the reasons for the adverse decision. *Greenholtz*, 442 U.S. at 16. Petitioner does not argue that he was deprived of either of these protections.

Petitioner instead argues that the BPH decision was not supported by "some evidence." While there is no federal constitutional requirement that parole be granted in the absence of "some evidence" of future dangerousness or anything else, *Greenholtz*, 442 U.S. at 16; *Hayward v. Marshall*, ___ F.3d ___, 2010 WL 1664977 at *10 (9th Cir. April 22, 2010), the United States Supreme Court has determined that state parole statutes can create a federally protected liberty interest in parole if the statute uses mandatory language that creates a presumption that parole will be granted if certain findings are made. *See, Board of Pardons v. Allen*, 482 U.S. 369, 377-378 (1987); *Greenholtz*, 442 U.S. at 12.

California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole authority, the prisoner "will pose an unreasonable risk of danger to society if released from prison." Title 15 Cal. Code Regs., § 2402(a). The Ninth Circuit has held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895,

902 (9th Cir. 2002) (applying "the 'clearly established' framework of
*Greenholtz* and *Allen*" to California's parole scheme).  The Ninth
Circuit also held in *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.
2007), that California Penal Code § 3041 vests all "prisoners whose
sentences provide for the possibility of parole with a
constitutionally protected liberty interest in the receipt of a parole
release date, a liberty interest that is protected by the procedural
safeguards of the Due Process Clause."  This "liberty interest is
created, not upon the grant of a parole date, but upon the
incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915
(9th Cir. 2003).

Although the Ninth Circuit in *Hayward* avoided "deciding whether
the California parole scheme establishes a predicate for imposing it
as a matter of federal constitutional law," *Hayward*, 2010 WL 1664977
at *11, it appears that the California parole scheme does give rise to
a cognizable liberty interest in release on parole.  In any event, the
Court declines to address this issue, because continuing with the
"some evidence" analysis leads to the same result in this case, a
denial of the instant petition.

**B.   "Some Evidence"**

A parole board's decision deprives a prisoner of due process with
respect to his constitutionally protected liberty interest in a parole
release date if the board's decision is not supported by "'some
evidence in the record,' or is 'otherwise arbitrary.'" *Irons*, 505
F.3d at 851 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)
(holding the "some evidence" standard applies in prison disciplinary

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 7

proceedings)).  The "some evidence" standard requires this Court to determine "whether there is any evidence in the record that could support the conclusion reached by the . . . board." *Hill*, 472 U.S. at 455-456.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-456).  The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'"  *Id*. at 1129 (quoting *Hill*, 472 U.S. at 457).

In order to determine whether "some evidence" supported the BPH's decision with respect to Petitioner, the Court must consider the California statutes and regulations that govern the BPH's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the BPH must set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date therefore, cannot be fixed . . . ."  Cal. Penal Code § 3041(b).  The overriding concern in determining parole suitability is public safety and the focus is on the inmate's current dangerousness.  *In re Dannenberg*, 34 Cal.4th

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 8

1061, 1086, 23 Cal.Rptr.3d 417, 104 P.3d 783, *cert. denied*, 546 U.S.
844, 126 S.Ct. 92 (2005).

The BPH has promulgated regulations setting forth the guidelines
it must follow when determining parole suitability.  *See* Cal. Code.
Regs., tit. 15 § 2402(c) and (d).  Circumstances tending to show that
a prisoner is unsuitable for release include the following:

> (1) the commitment offense, where the offense was committed in an
> "especially heinous, atrocious or cruel manner"; (2) the
> prisoner's previous record of violence; (3) "a history of
> unstable or tumultuous relationships with others"; (4) commission
> of "sadistic sexual offenses"; (5) "a lengthy history of severe
> mental problems related to the offense"; and (6) "serious
> misconduct in prison or jail."

Cal. Code. Regs., tit. 15 § 2402(c).  Circumstances tending to
show suitability for release include:

> (1) the prisoner has no juvenile record of assaulting others or
> committing crimes with a potential of personal harm to victims;
> (2) the prisoner has experienced reasonably stable relationships
> with others; (3) the prisoner has performed acts that tend to
> indicate the presence of remorse or has given indications that he
> understands the nature and magnitude of his offense; (4) the
> prisoner committed the crime as the result of significant stress
> in his life; (5) the prisoner lacks any significant history of
> violent crime; (6) the prisoner's present age reduces the
> probability of recidivism; (7) the prisoner "has made realistic
> plans for release or has developed marketable skills that can be
> put to use upon release"; and (8) "[i]nstitutional activities
> indicate an enhanced ability to function within the law upon
> release."

Cal. Code. Regs., tit. 15 § 2402(d).

In examining its own statutory and regulatory framework, the
California Supreme Court has held that the proper inquiry for a
reviewing court is "whether some evidence supports the *decision* of the
Board . . . that the inmate constitutes a current threat to public
safety, and not merely whether some evidence confirms the existence of
certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 9

(2008).  The California Supreme Court also asserted that the Board's decision must demonstrate an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  *Id*. at 1204-1205.  As long as the evidence underlying the BPH's decision has "some indicia of reliability," parole has not been arbitrarily denied.  *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).

In this case, the BPH determined that Petitioner was unsuitable for parole finding that he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  (Ct. Rec. 8, Exh. 2 at 53-61).  The BPH determined that Petitioner's commitment offense was carried out in an extremely callous and calculated manner.  The BPH found that the victim was abused by being shot five times and that Petitioner showed a total disregard for human suffering.  The BPH also found Petitioner's motive for the crime, retaliation for stealing a stereo, trivial in relation to the offense, and that Petitioner had a criminal history, including jail time and two years probation.  The BPH additionally cited Petitioner's failure to sufficiently participate in self-help programming and comments from psychiatric reports.  After considering all reliable evidence in the record, the BPH concluded that evidence of Petitioner's positive behavior in prison did not outweigh the evidence of his unsuitability for parole.  *Id*.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 10

With regard to the circumstances of the commitment offense, the BPH found that the offense was carried out in an extremely callous manner. (*Id*. at 53).  Although the focus under California law is the current dangerousness of the inmate, the gravity of the commitment offense alone can be a sufficient basis for denying parole where the facts are especially heinous or particularly egregious.  *In re Rosenbrantz*, 29 Cal.4th 616, 682 (2002); *Sass*, 461 F.3d at 1126; *Biggs*, 334 F.3d at 913-916; *Irons*, 505 F.3d at 852-853.  However, the Ninth Circuit very recently noted in *Hayward* that "an aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."  *Hayward*, 2010 WL 1664977 at *10.

Here, Petitioner confronted the victim with a loaded handgun because the victim had stolen a stereo from Petitioner.  (*Id*. at 53).  Petitioner then shot the victim, without provocation, when the victim failed to cooperate with an attempted citizen's arrest.  (*Id*. at 59).  The victim was abused by being shot five times.  (*Id*.).  Based upon these facts, the BPH reasonably concluded that the murder was carried out very dispassionately and in a calculated manner.  (*Id*. at 53).

The BPH also discussed Petitioner's criminal history and failure to profit from society's previous attempts to correct his criminality.  (*Id*. at 54).  The applicable guidelines direct the BPH to consider all relevant and reliable information, including "a prisoner's past criminal history," and "behavior before, during, and after [the

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 11

offense]." Title 15 Cal. Code Regs., § 2402(b).  As a result, the BPH properly considered Petitioner's prior arrests for loitering and arson and convictions for disturbing the peace and battery for which Petitioner received jail time and probation.  (Ct. Rec. 8, Exh. 2 at 54, 59).  Petitioner's prior criminal history and grant of probation provide some evidence to support the BPH's finding that Petitioner has a pattern of criminal conduct and has failed to profit from society's previous attempts to correct his criminality.

The BPH lastly found that Petitioner had not completed the necessary programming which is essential to his adjustment.  (*Id*. at 59).  The BPH specifically noted that Petitioner lacked participation in self-help therapy programs, like Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA").  (Ct. Rec. 8, Exh. 2 at 55).  During the hearing, the BPH indicated the 2004 psychiatric report of Dr. Preston Davis revealed Petitioner had started drinking alcohol at the age of 14 and that Petitioner claims to be an alcoholic, yet he has not attended AA or NA.  *Id*.  The BPH also noted the 1999 report of Dr. Katherine Powell.  Dr. Powell indicated that if Petitioner was released and returned to the consumption of alcohol, there is a possibility that he could act out aggressively.  (*Id*. at 56).  While Dr. Powell opined that this was unlikely due to Petitioner's age and maturity, she stated that Petitioner should be required to attend AA both in and out of the institution.  (*Id*. at 56-57).  Petitioner, however, has no record of participation in NA or AA.  Accordingly, there is some evidence to support the BPH's finding that Petitioner lacked participation in self-help therapy programs.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 12

Based on the foregoing, it is apparent there was "some evidence" to support the BPH's December 3, 2004 decision that Petitioner was unsuitable for release.

**III. The First Amendment**

Petitioner also argues that the BPH's decision violated his First Amendment rights because the panel relied in part on Petitioner's failure to participate in AA or NA, religion-based programs.

"It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion, or its exercise . . . ." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). The "coercion test" for a First Amendment violation looks to: (1) whether there was state action; (2) whether the state action amounted to coercion; and (3) whether the object of the coercion was religious or secular. *Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007) (applying "coercion test" to parolee's § 1983 action challenging a requirement that he attend a faith-based treatment program as a condition for remaining on parole); *Turner v. Hickman*, 342 F.Supp.2d 887, 894-895 (E.D. Cal. 2004) (applying "coercion test" to § 1983 action alleging inmates were required to participate in a faith-based treatment program as a condition for release on parole).

In the parole suitability context, the first element is satisfied if the parole board expressly states that the prisoner must participate in the faith-based program. *Turner*, 342 F.Supp.2d. at 895-896. The second element is met if the board advises the prisoner he will not be eligible for parole unless he participates in the

faith-based program.  *Id*. at 896.  Programs such as AA and NA are "fundamentally religious" within the meaning of the third element of the coercion test.  *Id*. at 896-897; *accord Inouye*, 504 F.3d at 713-714.

Although the BPH discussed Petitioner's failure to participate in self help programs like AA and NA, nothing in the BPH's decision required Petitioner's participation in AA or NA.  (Ct. Rec. 8, Exh. 2 at 55-60).  The BPH recommended that "if available [petitioner should] participate in self help, specifically a substance abuse program . . . ." (*Id*. at 60).  The BPH, however, did not indicate that Petitioner's participation in AA or NA was a condition to being found parole eligible.  Therefore, Petitioner does not satisfy the "coercion test" for proving a First Amendment violation.  *Turner*, 342 F.Supp.2d at 891-892 (hearing officer advised Petitioner that his participation in NA was a "mandatory" prerequisite to the board's parole suitability determination).  Petitioner's First Amendment claim is without merit.

**IV.  ADA**

Petitioner further asserts that the BPH violated the Americans with Disabilities Act ("ADA") by denying parole based on his alcoholism and psychiatric history.  First, it does not appear that Petitioner raised an ADA claim with the state courts; therefore, it appears he failed to exhaust this issue.  In any event, Petitioner has not shown that alcoholism is considered a disability under the ADA or that his mental illness or alcoholism qualifies as a disability under the ADA.  Petitioner's ADA claim is denied.

///

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 14

1    **CONCLUSION**

2        Petitioner was appropriately commended by the BPH for his

3    accomplishments in prison.  Petitioner was given credit for being in

4    Triple CMS and, as a result, being able to attend many therapy

5    courses.  Petitioner was credited for beginning stress management,

6    taking several training courses, working towards his GED and being

7    discipline free.  (Ct. Rec. 8, Exh. 2 at 58).  However, as discussed

8    above, there was still "some evidence" justifying the BPH's decision

9    to deny parole based on Petitioner being a danger to society if

10   released.  Accordingly, Petitioner's due process rights were not

11   violated by the denial of parole at his December 3, 2004 hearing.

12   Petitioner's First Amendment and ADA claims also lacks merit.

13        The Lake County Superior Court's adjudication of Petitioner's

14   claim did not result in a decision that was contrary to, or involved

15   an unreasonable application of, clearly established U.S. Supreme Court

16   precedent.  It also did not result in a decision that was based on an

17   unreasonable determination of the facts in light of the evidence

18   presented.  Accordingly, **IT IS HEREBY ORDERED** that Petitioner's

19   Petition for Writ of Habeas Corpus (**Ct. Rec. 1**) is **DENIED.  Judgment**

20   **shall be entered in favor of Respondents and against Petitioner**.

21        The Court further certifies that pursuant to 28 U.S.C. §

22   1915(a)(3), an appeal from this decision could not be taken in good

23   faith, and there is no basis upon which to issue a certificate of

24   appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

25   ///

26   ///

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 15

1    **IT IS SO ORDERED.**   The District Court Executive is hereby

2  directed to enter this order, **enter judgment accordingly**, furnish

3  copies to counsel and **Petitioner** and **CLOSE THE FILE**.

4    **DATED** this  3rd  day of June, 2010.

5

6                                S/Fred Van Sickle
                                 Fred Van Sickle
7                    Senior United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS – 16